*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FLABIO LOPEZ,

Defendant-Appellant.

UNPUBLISHED
January 13, 2026
2:48 PM

No. 369048
Wayne Circuit Court
LC No. 23-002345-01-FH

Before: BOONSTRA, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial convictions of possession with intent to deliver less than 50 grams of fentanyl, MCL 333.7401(2)(a)(*iv*), possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm, but remand to the trial court for the ministerial correction of the judgment of sentence.

## I. BACKGROUND

This case arises out of the execution of a search warrant at 1461 North Green Street in Detroit. Officers from the Detroit Police Department and the Special Response Team of the United States Department of Homeland Security (DHS) executed the search warrant on April 28, 2023. During the raid, Nicholas Reno, a sergeant with the Detroit Police Department, was stationed at the rear of the property in a position from which he could see the back of the subject house and look down into the house's fenced backyard. After DHS's Special Response Team announced themselves, Reno observed defendant open and shut the subject house's backdoor twice, then watched as defendant and another individual exited the subject house and ran to the far side of a recreational vehicle (RV) that was parked on the property. Shortly thereafter, DHS knocked down the fence going into the backyard, and defendant surrendered himself to them.

After defendant and the other individual were taken into custody, officers entered the subject house to search it. Inside, officers found cash scattered throughout the house that totaled $6,750. In the house's only bedroom, officers found pistol sales receipts with defendant's name on them and miscellaneous bills and envelopes addressed to defendant. Firearms were also found

in different places throughout the house. Officers additionally found packaging material, sandwich bags, small thumb-sized bags, and digital scales, as well as substances that they suspected were narcotics. An expert witness determined that one of the substances found at the home was 6.1 grams of fentanyl and para-fluorofentanyl, and another substance was 9.55 grams of methamphetamine.

Defendant testified on his own behalf, claiming that he did not live at the subject house and had only stayed in the RV on the property the night before the raid because he and his girlfriend had an argument. Defendant testified that, from the RV, he heard people talking on a speaker, so he walked outside and surrendered to the authorities.

Defendant waived his right to a jury trial, and at the ensuing bench trial, the trial court found defendant guilty as described.[1] Defendant then moved for a new trial and an evidentiary hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). In his motion, defendant argued that his trial counsel, Steven Shrag, provided ineffective assistance by pressuring defendant to waive his right to a jury trial and by failing to adequately prepare defendant to testify. Defendant also challenged the sufficiency of the evidence supporting his convictions.

At the ensuing *Ginther* hearing, Shrag testified that he had numerous meetings with defendant before trial during which he went through the discovery materials page by page with defendant, read the materials to him, and answered any questions defendant had. As to the possibility of defendant waiving his right to a jury trial, Shrag testified that he discussed the possibility of a bench trial with defendant multiple times, that he explained to defendant the difference between a bench trial and a jury trial, and that, in light of his conversations with defendant, there was "[n]o question" in Shrag's mind that defendant understood the difference between a bench trial and a jury trial when defendant decided to waive his right to a jury trial.[2] Shrag acknowledged that he told defendant that defendant "might want to consider a bench trial as opposed to a jury trial" when defendant asked Shrag for his opinion, but Shrag emphasized that it was defendant who made the final call—Shrag said he "never forced [defendant] to make that decision but we discussed it." Shrag further testified that he met with defendant before trial to prepare him to testify, but he could not say how long the meeting lasted; Shrag only said that it lasted "[l]ong enough where [Shrag] felt [defendant] seemed comfortable."

Defendant testified at the *Ginther* hearing that he had a third-grade reading level, and Shrag admitted that he was unaware of this. Defendant acknowledged that Shrag went through the

---

[1] The trial court directed a verdict of not guilty on an additional charge of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), as well as on an additional related felony-firearm charge. The judgment of sentence nonetheless errantly reflects defendant's conviction on a charge of possession with intent to deliver less than 50 grams of cocaine, rather than fentanyl. We therefore remand to the trial court for the ministerial correction of the judgment of sentence.

[2] Shrag added that he was also confident that defendant understood what he would be giving up by waiving his right to a jury trial because Shrag had previously represented defendant in a case that proceeded to a jury trial.

discovery materials with him but said that it was "real fast" and that he did not understand what Shrag told him. As for his waiver of a jury trial, defendant said that Shrag only spoke to him about it outside the courtroom, where Shrag told defendant that a bench trial was "faster" as "jury trials take a long time because it's twelve people." Defendant said that he only opted for a bench trial because that was what Shrag recommended. Defendant testified that, when he decided to waive his right to a jury trial, he did not understand that a jury trial meant that there were 12 people deciding his case instead of one, he did not understand that a jury verdict had to be unanimous, and he did not know what a hung jury was. Defendant also did not believe that Shrag adequately prepared him for trial because defendant did not know until he heard the evidence "that most of the stuff they were saying was all wrong," and Shrag only spent 30- or 40-minutes preparing defendant to testify.

Following this hearing, the trial court accepted supplemental briefing then issued an opinion and order in which it denied defendant's motion for a new trial. The court found in relevant part that Shrag met with defendant before trial and discussed with him the option of having a jury trial versus a bench trial, and recommended a bench trial under the circumstances. The court concluded that this recommendation was reasonable trial strategy, and that counsel's performance was not deficient because he discussed with defendant "how [he] had the option of proceeding with a jury trial," after which defendant went on record and voluntarily waived his right to a trial by jury.

The trial court also found that Shrag met with defendant before trial and discussed the case with him to prepare defendant for the bench trial, and it rejected defendant's argument that Shrag did not adequately prepare him for trial. The trial court reasoned that even defendant admitted that Shrag met with him before trial to review all the material, so "the facts failed to demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms."

Lastly, the court rejected defendant's insufficiency-of-the-evidence claim, concluding that the record evidence was sufficient to sustain defendant's convictions.

This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues on appeal that Shrag provided constitutionally deficient representation because he did not know that defendant read at a third-grade level, and without this knowledge, Shrag could not have (1) ensured that defendant understood the effect of waiving his right to a jury trial, or (2) prepared defendant for trial. We disagree.

### A. STANDARD OF REVIEW

Review of a trial court's decision rejecting an effective-assistance-of-counsel claim presents a mixed question of fact and law. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021). "[T]he trial court's factual findings supporting its decision are reviewed for clear error, while the court's determination of whether those facts violated the defendant's right to the effective assistance of counsel is reviewed de novo." *Id.* Clear error exists if the reviewing court is left

with a definite and firm conviction that the trial court made a mistake. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). We give deference to the trial court's credibility determinations because the trial court is better positioned to assess the credibility of those who appear before it. See *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018).

## B. ANALYSIS

"To establish a claim of ineffective assistance, 'a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different.' " *Haynes*, 338 Mich App at 429, quoting *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the heavy burden of proving otherwise, *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). When it comes to matters of trial strategy, this Court will not substitute its judgment for that of trial counsel, nor will this Court assess the reasonableness of a strategy with the benefit of hindsight. *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008).

Turning to defendant's appeal, all of his ineffective-assistance arguments are rooted in the fact that Shrag did not know that defendant read at a third-grade level. Defendant contends that this was significant because, without this knowledge, Shrag could not have made "special efforts to ensure" that defendant understood the things that Shrag discussed with him.

This assertion suffers from a glaring problem—it conflates defendant's ability to read with his ability to comprehend concepts that are explained to him. While defendant testified that he had difficulty reading, he never testified that he had problems with comprehension in general. Nor is there any evidence suggesting that defendant's struggles with reading were rooted in an intellectual disability that required a special accommodation like having things to be explained to him in simple terms. So, contrary to the assertion that defendant makes throughout his brief, there is nothing in the record supporting that Shrag needed to make "special efforts" to ensure that defendant understood what he and defendant discussed beyond the efforts that all attorneys are required to make to ensure that their clients understand the matters that the attorney and client discuss together.

With this clarification, we turn to defendant's arguments. Defendant first contends that Shrag provided ineffective assistance because he did not ensure that defendant understood what rights he was giving up when he waived his right to a jury trial, rendering defendant's waiver invalid. The trial court, however, found that Shrag sufficiently explained to defendant the significance of waiving his right to a jury trial. More specifically, the court found that Shrag "discussed [with defendant] the option of having a jury trial versus a bench trial," as part of which they discussed "the option of proceeding with a jury trial." This finding was supported by Shrag's testimony that he explained to defendant the difference between a bench trial and a jury trial, and that, by the end of their discussion, Shrag was confident that defendant understood the difference between the two. The trial court also observed that it questioned defendant on the record and found that defendant "freely, voluntarily, and willingly waived his right to a jury trial, with full understanding." All of these findings support that defendant fully comprehended the consequences of his actions when he waived his right to a jury trial, such that Shrag provided objectively

-4-

reasonable representation by adequately informing defendant about the consequences of waiving his right to a jury trial.

Defendant does not contend on appeal that any of the trial court's findings were clearly erroneous. Instead, defendant argues that Shrag did not sufficiently explain to defendant what waiving his right to a jury trial meant, as demonstrated by defendant's testimony at the *Ginther* hearing that, when he waived his right to a jury trial, he did not understand the potential advantages of a jury trial over a bench trial. The trial court, however, was not required to accept as true defendant's self-serving testimony on this point. We also note that nothing in the record suggests that defendant ever communicated to Shrag that he did not understand what it meant to waive his right to a jury trial or that he was unsure what he was giving up by doing so. Given this, it is unclear how Shrag was supposed to know about defendant's purported lack of understanding. This is especially true considering Shrag's testimony at the *Ginther* hearing that there was "[n]o question" in his mind that, following his conversations with defendant, defendant understood the difference between a bench trial and a jury trial when he decided to waive his right to a jury trial.

Defendant also briefly contests the wisdom of Shrag's recommendation to proceed with a bench trial, contending that Shrag's reasons for this recommendation were "woefully insufficient." But, as the trial court correctly recognized, recommending a bench trial can be a matter of strategy, and Shrag gave a reasonable basis for his chosen strategy—he thought that members of the community would "have harsh feelings about weapons and narcotics," and considering "all of the drugs and weapons found in the house," Shrag thought that a bench trial "would be more advantageous" because the judge presiding over defendant's case would be able to set aside such feelings and consider the evidence fairly. In light of this explanation, we agree with the trial court that Shrag's recommendation to opt for a bench trial constituted reasonable trial strategy, and this Court will not substitute its judgment for that of trial counsel on such matters. See *Petri*, 279 Mich App at 411.

Defendant next argues that Shrag provided ineffective assistance when he failed to ensure that defendant meaningfully participated in trial preparations by ensuring that defendant understood the prosecution's evidence against him. The trial court found that Shrag met with defendant and discussed his case with him to prepare him for trial, and that the evidence in the record did not establish that Shrag's performance in doing so was objectively unreasonable. The court's finding was supported by Shrag's testimony at the *Ginther* hearing that he went through the discovery materials page by page with defendant, read the materials to him, and answered any questions that defendant had. Defendant rightly points out on appeal that, due to his limited reading abilities, he could not independently review the discovery materials that Shrag gave him. But, again, Shrag testified that he went through the discovery materials page by page with defendant and read them to him. Defendant complains on appeal that this was insufficient because Shrag did not "ascertain whether [defendant] understood" the discovery materials, but defendant never testified that he told Shrag that he had any difficulty understanding the discovery materials, and Shrag testified that, as he went through the discovery materials with defendant, he answered any questions that defendant had. On this record, we agree with the trial court that defendant failed to establish that Shrag performed objectively unreasonably with respect to how he handled the discovery materials.

In his final ineffective-assistance claim, defendant contends that Shrag performed unreasonably by failing to adequately prepare defendant to testify. Again, the trial court found that Shrag adequately prepared defendant for trial, and that defendant failed to establish that Shrag's performance in doing so was objectively unreasonable. That Shrag adequately prepared defendant to testify in particular is supported by Shrag's testimony that he met with defendant to prepare him to testify, and that the meeting lasted "long enough" for Shrag to feel confident that defendant was "comfortable" testifying. Defendant testified at the *Ginther* hearing that the meeting in which Shrag prepared him to testify lasted 30 to 40 minutes, and that Shrag explained to defendant during this meeting how the prosecution was going to ask defendants questions and how defendant should testify generally. Defendant never testified that he communicated to Shrag that he felt unprepared to testify or that he had any lingering questions about testifying after their meeting. On this record, we agree with the trial court that defendant failed to establish that Shrag's performance fell below an objective standard of reasonableness.

For these reasons, we agree with the trial court's conclusion that defendant failed to establish that Shrag's representation of defendant was objectively unreasonable. Defendant thus failed to establish the first prong of his ineffective-assistance-of-counsel claims, and the trial court properly rejected defendant's motion for a new trial on that ground.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence presented at his trial was insufficient to prove that defendant constructively possessed the controlled substances and firearms found at the house. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo whether a defendant's conviction was sufficiently supported by the evidence. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). The ultimate question to be resolved in a sufficiency-of-the-evidence claim is whether, on the basis of the evidence presented, "a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). In making this determination, all evidence must be viewed in the light most favorable to the prosecution. *Id*. Circumstantial evidence and reasonable inferences that arise from that evidence can be sufficient to support a finding that the elements of a crime were proven beyond a reasonable doubt. *Id*. It is improper for this Court to reweigh the evidence or reassess witness credibility because those determinations are reserved for the factfinder. *Id*.

## B. ANALYSIS

"To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 409, 505; 597 NW2d 864 (1999). Defendant contests on appeal whether a reasonable juror could find beyond a

reasonable doubt that defendant possessed the illegal substances and firearms found at the subject house, i.e., he contests the third and fourth elements of possession with intent to deliver, and the possession element of felony-firearm.

The prosecution can establish the possession element of possession by establishing beyond a reasonable doubt that the defendant—either individually or jointly—actually or constructively possessed the item in question. *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Constructive possession can be shown by demonstrating that the defendant "had the right to exercise control of the [item] and knew that it was present." *Id*. at 520 (quotation marks and citation omitted). See also *People v Williams*, 268 Mich App 416, 421; 707 NW2d 624 (2005). A defendant's mere presence at a location where contraband is found is not enough to prove constructive possession. *Wolfe*, 440 Mich at 520. See also *People v Cohen*, 294 Mich App 70, 77; 816 NW2d 474 (2011) ("Close proximity to contraband in plain view is evidence of possession.") (quotation marks and citation omitted). "Instead, some additional connection between the defendant and the contraband must be shown." *Wolfe*, 440 Mich at 520. The proper inquiry is whether "the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband," i.e., whether "the evidence establishes a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance." *Id*. at 521 (quotation marks and citation omitted).

Because this case was a bench trial, the trial court made a record stating which facts it relied upon to reach its finding that defendant constructively possessed the drugs and firearms in the house. See MCR 6.403. Officers testified that they found suspected drugs littered throughout the subject house, including baggies of drugs found in the plumbing, which the officers suspected someone tried to flush. The officers also found drugs and packaging materials in plain view on a table in the house's living room, which they explained was consistent with the sale of narcotics. The court also credited Reno's testimony that he saw defendant exit the house during the police raid. The court explained that, despite Reno being positioned away from the house and the raid taking place in the early morning, the court credited Reno's testimony that he could clearly see that defendant was the individual exiting the house during the raid because the back area of the house was illuminated by both natural light and a light on the back of the house. The court also credited an officer's testimony that men's clothing was found in the only bedroom, as were "pistol sales records" that bore defendant's name and unidentified documents establishing "proof of residency for the Defendant." The court found the pistol sales receipts highly persuasive evidence that defendant resided at the house because they tended to place defendant in the house's only bedroom where the men's clothing was found. The court acknowledged that the address listed on the pistol sales receipts did not match the address of the subject house, but the court still believed that it was reasonable to infer that defendant lived at the subject house "at some point" from the simple fact that the pistol sales receipts were found in the house's only bedroom. The court also acknowledged defendant's testimony that he did not live at the subject house and that he stayed in the RV the night before the raid because he got into an argument with his girlfriend, but the court found this testimony "incredible" because it was not believable that defendant "just happened to have an argument on the morning in question, and ends up just going to the RV."

Viewing all of the evidence in the light most favorable to the prosecution, and deferring to the trial court's assessment of what weight to give the evidence and the court's credibility determinations, we conclude that a rational trier of fact could find beyond a reasonable doubt that

defendant constructively possessed the controlled substances and firearms that were found at the subject house. The trial court credited Reno's testimony that he saw defendant leaving the house out the backdoor as the police were beginning their raid, and officers found men's clothing and "pistol sales records" with defendant's name on them in the house's only bedroom. The court also credited officers' testimony that they found documents establishing "proof of residency," i.e., that defendant lived at the subject house. From this evidence, it was reasonable for the court to infer that defendant lived at the subject house, or at the very least that he resided there sometimes in the house's only bedroom. And given the large amount of controlled substances and the number of firearms that were found scattered throughout the subject house—including in plain view on a table alongside packaging material—it was reasonable for the court to infer that the person who resided in the subject house's only bedroom knew of the items in the house and exercised control over them. This is especially so given that someone tried to flush baggies of drugs down the toilet, which caused the drugs to get stuck in the house's plumbing. Accordingly, considering the totality of the circumstances, there was sufficient evidence from which a reasonable factfinder could infer that defendant exercised dominion and control over the controlled substances and firearms found at the subject house.

Defendant argues on appeal that the fact that the pistol sales receipts did not list his address as that of the subject house "*contradicts* any inference" that he resided at the subject house. This argument ignores that the trial court found the pistol sales receipts significant because they were personal documents belonging to defendant that were found in the house's only bedroom. That the pistol sales receipts did not list defendant's address as the subject house was acknowledged by the trial court, and it reasonably concluded that the fact remained that the pistol sales receipts were personal documents belonging to defendant found in the subject house's only bedroom. Defendant's argument related to the pistol sales receipts simply goes to how much weight the trial court should have afforded that evidence, but that is something with which this Court cannot interfere. See *Kanaan*, 278 Mich App at 618.

Defendant also challenges Reno's testimony placing defendant inside the subject house on the morning of the raid, but the trial court addressed all of the arguments that defendant raises on this point. Defendant questions how Reno could identify defendant as the individual leaving the house given where Reno was stationed and the early-morning hours when the raid occurred, but the court credited Reno's testimony that the combination of natural and artificial light in the back of the subject house allowed Reno to positively identify defendant as the individual leaving the house from where Reno was stationed. Defendant also contends that his testimony that he stayed in the RV the night before the raid was more believable than Reno's testimony that he saw defendant leaving the house, but the trial court explicitly disagreed—it found defendant's testimony that he "just happened" to stay in the RV on the night before the raid to be "incredible." This Court generally defers to the factfinder's credibility determinations, see *id.*, and we see no reason to stray from that general rule in this case.

For these reasons, we conclude that, viewing the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the verdict, the evidence was

sufficient to support a finding beyond a reasonable doubt that defendant constructively possessed the controlled substances and firearms found at the subject house.[3]

Affirmed and remanded for the ministerial correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young

---

[3] Defendant does not seriously contest the other elements of his possession-with-intent-to-deliver convictions, but if he did, we would conclude that the evidence present was sufficient to support a finding beyond a reasonable doubt that the recovered substances were narcotics (as confirmed by forensic analysis); the weight of the recovered substances (the forensic investigator testified that substances were positive for 6.1 grams of a mixture of fentanyl and para-fluorofentanyl and 9.55 grams of methamphetamine); that defendant was not authorized to possess these controlled substances; and that defendant intended to distribute the controlled substance (officers found packaging material, scales, and drugs in small baggies in the subject house).